UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| STEVEN W. LAVERY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. V-11-3 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner, | § | |
| Social Security Administration, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court are Plaintiff Steven W. Lavery's ("Plaintiff") and Defendant Michael J. Astrue's (the "Commissioner") cross motions for summary judgment (Dkt. Nos. 8 & 10). Having considered the motions, the Commissioner's brief (Dkt. No. 9), the record, and the applicable law, the Court finds that Plaintiff's motion should be **DENIED**, the Commissioner's motion should be (Dkt. No. 8) **GRANTED**, and the decision of the ALJ should be **AFFIRMED**.

**I. Background**

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to review the decision of the Commissioner denying Plaintiff's application for disability insurance benefits. (Pl. Compl., Dkt. No. 1.)

Plaintiff filed his application for Title II disability insurance benefits on May 12, 2008, alleging that he was disabled beginning March 4, 2008 due to heart problems, blood diseases, liver problems, hypertension, vertigo, possible chronic obstructive pulmonary disease (COPD), hemocromatosis, and high cholesterol. (Tr. 101–07.)[1] His application was denied by the Commissioner. (Tr. 44.) Plaintiff had a video conference before an Administrative Law Judge

---

1. Citations to "Tr." refer to the administrative transcript (Dkt. No. 6).

(ALJ) on May 3, 2010, at which a vocational expert (VE) testified. (Tr. 18, 33–9.) Plaintiff appeared at the hearing with his attorney and also testified. (Tr. 18, 21–34, 37.) At the time of the hearing, Plaintiff was 55 years old and not currently working. (Tr. 21–23.) Plaintiff had completed the eleventh grade and received a General Equivalency Diploma. (Tr. 22.)

On July 30, 2010, the ALJ issued a decision finding that Plaintiff was not disabled under §§ 216(i) and 223(d) of the Social Security Act. (Tr. 4–13.) The Decision Review Board selected Plaintiff's claim for review but did not complete the review during the time allowed. (Tr. 1, 4.) At that time, the ALJ's determination became the final decision of the Commissioner. Plaintiff filed this action on January 21, 2011, seeking review of the Commissioner's final decision. (Dkt. No. 1.)

## II. Legal Standard

The Court's review of the Commissioner's final decision to deny disability benefits is limited to two issues: (1) whether substantial record evidence supports the decision, and (2) whether proper legal standards were used to evaluate the evidence. *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002).

If the findings of fact contained in the Commissioner's decision are supported by substantial evidence, they are conclusive and this Court must affirm. The widely accepted definition of "substantial evidence" is more than a mere scintilla, but less than a preponderance. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In applying this standard, the Court is to review the entire record, but it may not reweigh the evidence, decide the issues de novo, or substitute the Court's judgment for the Commissioner's.

*Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the Court overturn it. *Johnson v. Bowen*, 864 F.2d 340, 343—44 (5th Cir. 1988). The Court reviews the legal standards applied by the Commissioner de novo.

To claim entitlement to disability benefits, a claimant must show that he was disabled on or before the last day of his insured status. *Demandre v. Califano*, 591 F.2d 1088 (5th Cir. 1979). The legal standard for determining disability under the Act is whether the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that the Commissioner should evaluate disability claims according to the following sequential five-step process:

(1) A claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are.

(2) A claimant will not be found to be disabled unless he has a "severe impairment."

(3) A claimant whose impairment meets or is equivalent to an impairment listed in an Appendix to the regulation will be considered disabled without the need to consider vocational factors.

(4) A claimant who is capable of performing work he has done in the past must be found "not disabled."

(5) If the claimant is unable to perform his previous work as a result of his impairment, then factors such as age, education, past work experience, and residual functioning capacity must

be considered to determine whether he can do other work. *See* 20 C.F.R. § 404.1520(b)–(f); *see also Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

To be entitled to benefits, a claimant bears the burden of proving that he is unable to engage in substantial gainful activity within the meaning of the Social Security Act. *See Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The claimant must show that he suffers from a mental or physical impairment that not only renders him unable to perform his previous work, but, given his age, education, and work experience, prevents him from engaging in any other kind of substantial gainful work that exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. *Johnson v. Harris*, 612 F.2d 993, 997 (5th Cir. 1980). However, if the claimant can show that he can no longer perform his previous job, the burden then shifts to the Commissioner to show that there exists some other form of substantial gainful employment the claimant can perform. *Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980). By judicial practice, this translates into the claimant bearing the burden of proof on the first four of the above steps and the Commissioner bearing the burden on the fifth. *See Brown*, 192 F.3d at 498; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The analysis stops at any point in the five-step process upon a finding that the claimant is or is not disabled. *See Greenspan*, 38 F.3d at 236.

### III. Analysis

Following Plaintiff's May 3, 2010 hearing, the ALJ evaluated Plaintiff's disability claim according to the aforementioned five-step process and issued the following Findings of Fact and Conclusions on Law:

    (1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

    (2) The claimant has not engaged in substantial gainful activity since March 4, 2008, the alleged onset date (20 CFR § 404.1571 *et seq.*).

    (3) The claimant has the severe impairments [*sic*] of mild coronary artery disease status post stenting in 2006 (20 CFR § 404.1520(c)).

    (4) The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525 and 404.1526.

    (5) [T]he claimant has the residual functional capacity to perform the full range of medium work as defined in 20 CFR § 404.1567(c).

    (6) The claimant is capable of performing past relevant work in property maintenance. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR § 404.1565).

    (7) The claimant has not been under a disability, as defined in the Social Security Act, from March 4, 2008, through the date of this decision (20 CFR § 404.1520(f)).

(Tr. 9–13.)

Plaintiff now presents three grounds for reversal:

(1) The ALJ erred in rejecting the opinions of Drs. Warman and Schneider in finding that Plaintiff's depression caused no functional limitations.

(2) The ALJ erred in concluding that Plaintiff's COPD and vertigo were not severe.

(3) The Plaintiff should be found disabled under the Medical-Vocational Guidelines.

**A.  Whether the ALJ erred in rejecting the opinions of Drs. Warman and Schneider in finding that the Plaintiff's depression caused no functional limitations.**

Plaintiff first argues that the ALJ erred by improperly rejecting the opinions of Drs. Warman and Schneider in finding that Plaintiff's depression caused no functional limitations. According to Plaintiff, the ALJ "rejected the well-grounded opinions of two qualified physicians,

5

relying only on his own lay-expertise in finding the Plaintiff's depression so minimal as to be non-severe." (Dkt. No. 10 at 5.)

Consultative examiner Dr. Francis Warman Ph.D., performed a comprehensive psychological profile of Plaintiff on October 27, 2008. (Tr. 200–03.) He concluded that Plaintiff suffered from depression secondary to his heart attack and that Plaintiff's depression would make it difficult, but not impossible, for him to maintain attendance and follow schedules. (Tr. 202.) State agency medical consultant, Dr. Michael Schneider Psy.D., did not examine Plaintiff but instead reviewed Dr. Warman's examination notes. Dr. Schneider concluded that Plaintiff had a severe mental impairment that caused moderate functional limitations in all three areas of the "B" criteria: (1) Restrictions of Activities of Daily Living, (2) Difficulties in Maintaining Social Functioning, and (3) Difficulties in Maintaining Concentration, Persistence, or Pace. (Tr. 215.) The ALJ gave no weight to the opinions of Drs. Warman or Schneider. (Tr. 10.)

The record shows that the ALJ did not rely "only on his own lay-expertise" in finding that Plaintiff's alleged depression caused no functional limitations, but instead gave controlling weight to Plaintiff's treating physician, Dr. Joseph Pepe. (Tr. 10.) According to Dr. Pepe, Plaintiff had "no significant psychological, psychiatric or behavioral problems that affect his ability to function." (Tr. 198 (emphasis by Dr. Pepe).) When determining disability, the opinion of the treating physician who is familiar with the claimant's impairments, treatments, and responses is given great weight. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). A treating physician's opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Id.*; *Martinez v. Charter*, 64 F.3d 172, 175–76 (5th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)).

The ALJ further recognized that Plaintiff did not allege a mental health impairment when he filed for disability benefits and had no record of mental health treatment. (Tr. 10.) Moreover, the hearing transcript shows that although Plaintiff testified that he sometimes had problems with his memory and focusing on the task at hand (Tr. 31), Plaintiff made no mention of being depressed during the hearing and pointed to no evidence indicating that his depression affected his ability to function.

Plaintiff now argues that "[r]ather than detracting from the evidence of severe depression, the fact that the Plaintiff did not allege he suffered from disabling depression suggests that his depressive symptoms were genuine, and not calculated to exaggerate his condition." (Dkt. No. 10 at 5.) The Court is not persuaded by this argument. As the Fifth Circuit explained in *Leggett v. Chater*, "The ALJs duty to investigate . . . does not extend to possible disabilities that are not alleged by the claimant or to those disabilities that are not clearly indicated on the record. Because [Plaintiff] never raised the issue of [depression] until this appeal, [Plaintiff] cannot say that he put his mental impairments before the ALJ." *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *see also Domingue v. Barnhart*, 388 F.3d 462, 463 (5th Cir. 2004) (affirming ALJ's conclusion that Plaintiff's depression was "no impairment at all" where, "[a]t the administrative level [Plaintiff] did not contend that depression was an impairment, and, in the courts, she pointed to no evidence indicating that her alleged depression affected her ability to work").

The Court finds that substantial evidence supports the ALJ's decision that Plaintiff's depression caused no functional limitations, and this issue does not require remand.

**B. Whether the ALJ erred in concluding that Plaintiff's COPD and vertigo were not severe.**

**1. COPD**

Plaintiff next claims that the ALJ erred by failing to apply the standard set forth in *Stone v. Heckler* in evaluating whether his COPD was severe.

Under *Stone*, "'An impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education[,] or work experience.'" *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)). The severity requirement standard must be set forth by reference to *Stone* or "another of the same effect . . . ." *Id.* at 1106.

In the "Applicable Law" section of his decision, the ALJ cited to Social Security Ruling (SSR) 85-28, wherein the Commissioner adopted the severity standard set forth in *Stone*. (Tr. 8 (citing SSR 85-28, 1985 WL 56856, *2 (1985).) The ALJ also reiterated this standard when he evaluated Plaintiff's coronary artery disease, stating, "I find that [Plaintiff's] impairment produce [*sic*] more than minimal reduction in the ability to perform work related activities and, therefore, constitutes as [*sic*] medically determinable severe impairment." (Tr. 10.) The ALJ again used the appropriate standard when he stated that Plaintiff's "medically determinable impairments of obesity, tobacco use, hypertension[,] and hemocromatosis do not cause more than minimal limitation in [Plaintiff's] ability to perform basic work and are therefore nonsevere." (*Id.*)

However, the Court agrees with Plaintiff's claim that the ALJ did not apply the *Stone* standard with respect to Plaintiff's COPD. In concluding that Plaintiff's COPD was not severe, the ALJ did not find that Plaintiff's COPD had only a "minimal effect" on Plaintiff and "would not be expected to interfere" with his ability to function. *See Stone*, 752 F.2d at 1101. Instead,

8

the ALJ stated that Plaintiff's "COPD does not severely impair his ability to function." (Tr. 10.) As the District Court for the Northern District of Texas recognized in *Ruby v. Astrue*, "In the Fifth Circuit, the appropriate legal standard for determining whether a claimant's impairment is severe is *de minimus*. . . . Unlike the standard that the ALJ applied, *Stone* provides no allowance for the minimal interference on a claimant's ability to work." *Ruby v. Astrue*, 2009 WL 4858060, *8 (N.D. Tex. Dec. 14, 2009).

"*Stone* appears to require remand in any case in which the ALJ fails to properly reference the *Stone* standard." *Bradshaw v. Astrue*, 2008 WL 4387087, *5 (N.D. Tex. Sept. 26, 2008) (Lane, Mag.). The Fifth Circuit's subsequent rulings, however, "have clarified the holding to require remand only when the ALJ failed to reference the *Stone* standard and the case was adjudicated at step 2 of the sequential evaluation process." *Id.* (citing *Chaparro v. Bowen,* 815 F.2d 1008, 1011 (5th Cir. 1987); *Jones v. Bowen*, 829 F.2d 524 (5th Cir. 1987); *Lopez v. Bowen*, 806 F.2d 632 (5th Cir. 1986)).

Because the ALJ did not summarily dispose of Plaintiff's claims at Step Two, but instead determined that Plaintiff had at least one severe impairment and proceeded to Step Four to determine that Plaintiff was not disabled, the proper focus here is whether substantial evidence supports the ALJ's residual functional capacity (RFC)[2] assessment and ultimate determination that Plaintiff was not disabled. *See Chaparro*, 815 F.2d at 1011 ("[T]his case did not turn on whether or not [Plaintiff's] impairment was severe, but on whether [Plaintiff] could return to his past relevant work—an inquiry unaffected by the test set forth in *Stone*." ).

The Court will address the ALJ's overall RFC analysis in Part III.C, *infra*, in analyzing Plaintiff's claim that an "RFC assessment at the medium level is untenable." (Dkt. No. 10 at 13.)

---

2. "Residual functional capacity" (RFC) refers to the greatest capacity of an individual to do work despite any limitations. 20 C.F.R. § 416.945(a)(1).

9

With respect to Plaintiff's COPD, however, the evidence in the record shows that the outcome would remain the same if the *Stone* standard were applied.

First, the record shows that state agency medical consultant Dr. Burton Nault, MD, completed a physical RFC for Plaintiff on December 5, 2008, and determined that Plaintiff had no environmental limitations with respect to fumes, odors, dust, gases. (Tr. 227.) The ALJ nonetheless considered Plaintiff's COPD when he questioned the VE, specifically asking whether there were jobs available in the national economy that Plaintiff could perform with a medium RFC where he would not be exposed to environmental irritants such as fumes. (Tr. 39.) The VE responded in the affirmative and identified the jobs of grocery store bagger or packer in the manufacturing field. (*Id.*)

The record further shows that the ALJ considered Plaintiff's allegation that "his medical conditions cause difficulty with breathing" in his RFC assessment, but ultimately concluded that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible." (Tr. 11.) The ALJ explained that he found Plaintiff's credibility to be lacking because Plaintiff's claim that his condition totally restricts his functioning was inconsistent with his reported activities of daily living, which included playing with and caring for his grandchildren, light household chores, walking daily, watching television, going to the store, and going out to eat. (Tr. 12.) The performance of daily activities such as these is relevant when evaluating the credibility of a plaintiff's disability claims. *Reyes v. Sullivan*, 915 F.2d 151, 155 (5th Cir. 1990); *see also Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992) (noting that the claimant engaged in a variety of activities, including visiting family and friends, attending church, dressing and bathing herself, preparing her own lunch, and driving an automobile once or twice a week). An ALJ's assessment of a claimant's credibility is

accorded great deference, and the ALJ need not give greater weight to a claimant's subjective complaints than contrary objective medical evidence. *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000); *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

The ALJ also recognized that "while treating sources repeatedly advised [Plaintiff] that smoking cessation is extremely important in terms of his COPD and hematologic situation (Exhibit 12F), [Plaintiff] continues to smoke." (Tr. 10.) Specifically, the ALJ noted that Plaintiff reported smoking three packs a day in 2006 and was still smoking a pack a day in 2009. (Tr. 10.) At the time of his hearing in 2010, Plaintiff was smoking two packs a day. (Tr. 37.)

Under the Regulations, a claimant must follow the treatment prescribed by his or her physician if the treatment can restore the claimant's ability to work. 20 C.F.R. § 404.1530. If a claimant fails to follow prescribed treatment without good reason, the claimant will not be entitled to disability. *Id.*; *see also Johnson v. Sullivan*, 894 F.2d 683, 685 n.4 (5th Cir. 1990) ("Even if [Plaintiff] were found to be disabled . . . he would still not be entitled to recover benefits inasmuch as he failed to follow the treatment regimen prescribed by his physicians."). It is also within the ALJ's discretion to discount a claimant's subjective complaints based on his decision to not follow physicians' recommendations. *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991). Thus, even if Plaintiff's "disregard of medical advice may not meet all of the requirements to warrant a finding of not disabled under 20 C.F.R. § 404.1530"—*i.e.*, that quitting smoking would have restored Plaintiff's ability to work—"it may be an indication . . . that . . . [Plaintiff's] symptoms were not that severe because they did not cause him to cease smoking." *Tolliver ex rel. Tolliver v. Astrue*, 2012 WL 566906, *6 n.8 (W.D. La. Jan. 23, 2012) (noting that the claimant "inexpicably continued to smoke one and one-half packs of cigarettes per day, despite having been warned by his doctor to cease smoking some four years earlier").

Plaintiff cites the Northern District of Texas' opinion in *Bradshaw v. Astrue* in support of his claim that the ALJ erred in finding that Plaintiff's COPD was non-severe due to Plaintiff's failure to quit smoking. *Brawshaw*, 2008 WL 4387087 at *5. In *Bradshaw*, the possible error at issue was "a severity determination at step 2 premised upon the ALJ's belief that the claimant did not take steps to deal with his [COPD] by quitting smoking." *Id.* The magistrate judge recognized that "[c]learly, a claimant's failure to follow prescribed treatment may be considered in making a credibility determination," but found that the record did "not contain evidence suggesting that Plaintiff was instructed to stop smoking, that stopping smoking would reduce or eliminate either his COPD or any limitations imposed by his COPD, or that Plaintiff ceased smoking during the relevant time period." *Id.* at *6–7. Here, unlike *Brawshaw*, the ALJ recognized that Plaintiff's treating physicians repeatedly stressed the importance of quitting smoking "in terms of his COPD." (Tr. 10.)

Plaintiff further urges the Court to adopt the magistrate judge's opinion in *Butler v. Astrue*, whereby the ALJ cited the plaintiff's continued smoking despite medical advice to quit due to COPD. *Butler v. Astrue*, 2008 WL 2704642, *22 (S.D. Tex. Jul. 2, 2008) (Stacy, Mag.). In reversing the ALJ's decision, the magistrate found that although the plaintiff's medical records "contain[ed] recommendations from Butler's physicians advising her to stop smoking[] and documentation of whether or not Butler was still smoking at the time of her examinations," there was no "objective medical evidence in the form of either signs or laboratory findings that would conclusively indicate how Butler's smoking affected her COPD . . . ." *Id.*

According to the National Institutes of Health (NIH), "Smoking is the leading cause of COPD. The more a person smokes, the more likely that person will develop COPD." http://www.nlm.nih.gov/medlineplus/ency/article/000091.htm (last visited Aug. 8, 2012). The

NIH further warns that "[p]ersons with COPD MUST stop smoking. This is the best way to slow down the lung damage." *Id.* (emphasis in original). *See also Archibald v. Astrue*, 2008 WL 763089, *3 (N.D. Tex. March 21, 2008) ("The ALJ noted plaintiff had been diagnosed with [COPD] and that plaintiff's doctors had repeatedly advised him that his heavy smoking caused the symptoms associated with his COPD, to wit: shortness of breath and decreased stamina, of which he intermittently complained."). Thus, the Court is not persuaded by the magistrate's opinion in *Butler* that the ALJ erred in finding a link between the plaintiff's smoking and COPD simply because her medical records did not contain "laboratory findings" establishing such a connection.

Because Plaintiff did not follow the prescribed treatment for his COPD, the evidence supports the ALJ's conclusion that Plaintiff's complaints were not credible and his COPD was not a disabling impairment. *See Kramer v. Astrue*, 2009 WL 2488127, *6 (S.D. Tex. Aug. 6, 2009) (finding claimant was not disabled where claimant "was asked repeatedly to stop smoking, drinking, and using marijuana" but "postponed or failed to follow these treatments"); s*ee also Vogt v. Astrue*, 2011 WL 5245421, *13 (N.D. Tex. Nov. 2, 2011) (ALJ properly found that claimant's non-compliance with her doctor's prescribed treatment to quit smoking decreased her credibility); *Clause v. Astrue*, 2009 WL 1941276, *11–12 (E.D. La. Feb. 3, 2009) (same). Accordingly, this issue does not require remand.

### 2. Vertigo

Plaintiff also complains that the ALJ failed to consider whether his vertigo is severe.

In his initial application for benefits, Plaintiff listed vertigo as one of the illnesses or conditions that limits his ability to work. (Tr. 115.) At the hearing, Plaintiff complained that his vertigo made him dizzy like a pendulum and was "with [him] 12/7." (Tr. 28.) In this proceeding,

13

Plaintiff cites a Medical Opinion Re: Ability to do Physical Activities by Gordon Barth stating that Plaintiff had been diagnosed with vertigo (Tr. 339–41) and a report by Dr. Joseph Pepe indicating that Plaintiff has a past medical history of benign positional vertigo (Tr. 389).

Although the ALJ did not specifically mention Plaintiff's vertigo in his decision, his RFC assessment recognized that Plaintiff reported no dizziness during two visits to his treating physician, Dr. Pepe, in 2007. (Tr. 10.) The ALJ also stated that he "gave little weight to the opinion of Gordon Barth, degree unknown," finding that "[t]he records from the Yorktown Clinic do not support [Plaintiff's] functional limitations." (Tr. 12.)[3]

The record shows that Plaintiff self-reported vertigo to the Yorktown Clinic on August 26, 2009, but vertigo is not listed under objective assessments or diagnoses. (Tr. 423–24.) Likewise, a report generated by Dr. Pepe following a December 12, 2007 physical examination lists benign positional vertigo under the "Subjective" section; however, Dr. Pepe noted that Plaintiff reported no dizziness and did not include a diagnosis of vertigo in his "Assessment" section. (Tr. 171–73.) Based on this record, it is unclear whether Plaintiff was ever diagnosed with vertigo, or whether he merely told physicians that he was. *See Pruitt v. Astrue*, 2008 WL 2704978, *7 (W.D. La. Jun. 23, 2008) (noting that "there is no medical evidence or diagnosis of congestive heart failure in the record before this court; there is only [Plaintiff's] statement to various doctors that she has had congestive heart failure in the past").

Assuming that Plaintiff was diagnosed with vertigo, a diagnosis alone is not enough to establish a disability. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir.1983). Plaintiff must show that he was "so functionally impaired by [his vertigo] that [he] was precluded from engaging in any substantial gainful activity." *See Id.* With the exception of Gordon Barth's"

---

3. Perhaps one reason the ALJ gave little weight to Barth's opinion was the fact that, contrary to every other physician who has examined Plaintiff since at least 2004, Barth's report explicitly states that Plaintiff need not avoid exposure to cigarette smoke. (Tr. 341.)

Medical Opinion Re: Ability to do Physical Activities"—to which the ALJ stated he gave little weight—the medical records referencing Plaintiff's vertigo offer nothing in regard to resulting limitations during the relevant period. Dr. Nault's physical RFC assessment also includes no postural or manipulative limitations based on Plaintiff's vertigo. (Tr. 225–226, 230.)

The Court finds that substantial evidence supports a conclusion that Plaintiff's alleged vertigo was not a disabling impairment. Accordingly, this issue does not require remand.

### C. Whether Plaintiff should be found disabled under the Medical-Vocational Guidelines.

Finally, Plaintiff argues that in light of his "severe impairments of COPD, vertigo, depression, and obesity . . . an RFC assessment at the medium level is untenable." (Dkt. No. 10 at 13.) Instead, Plaintiff argues that he should be limited to light-level work, and because he is a person of advanced age under the Medical-Vocational Guidelines, the "Grids" require that he must be found disabled under Rule 202.06.

Although Plaintiff's application for benefits alleged that Plaintiff was unable to do any type of work because of a number of maladies, including heart problems, blood diseases, liver problems, hypertension, vertigo, possible chronic obstructive pulmonary disease, hemocromatosis, and high cholesterol, the ALJ only found one impairment was severe, *i.e.*, Plaintiff's "mild coronary artery disease status post stenting." (Tr. 10.) The ALJ did, however, find that even considering *all* of Plaintiff's impairments in combination, including those that were non-severe, Plaintiff was able to perform the full range of medium work. (Tr. 11.) The ALJ specifically acknowledged that Plaintiff alleged his medical conditions caused difficulty with breathing, fatigue, stamina, and memory and found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (*Id.*) However, as discussed at length in Part III.B.1, *supra*, the ALJ concluded that Plaintiff's statements

concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. (*Id.*)

Having reviewed the record in its entirety, which includes the state agency medical consultant's physical RFC assessment finding that Plaintiff could perform medium work (Tr. 224), the Court finds that substantial evidence supports the ALJ's conclusion that Plaintiff had the RFC to perform medium work through the date last insured. Accordingly, this issue does not require remand.

## IV. Conclusion

For the reasons set forth above, Plaintiff's Motion for Summary Judgment (Dkt. No. 10) is **DENIED**, the Commissioner's Motion for Summary Judgment (Dkt. No. 8) is **GRANTED**, and the decision of the ALJ is **AFFIRMED**.

It is so **ORDERED**.

**SIGNED** this 8th day of August, 2012.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE